FRANK v. BRADLEY & CURRIER CO., Limited.

(Supreme Court, Appellate Division, First Department. June 30, 1899.)

1. DECEIT—VENDOR AND PURCHASER—STATEMENTS OF OPINION AND BELIEF.
    The statement of a vendor to the purchaser that a cellar on the premises is dry, and that he has never had any trouble with it, and that the purchaser may take his word for it, is not the expression of an opinion or a belief, but the statement of a fact.

2. SAME—KNOWLEDGE AS TO TRUTH OF STATEMENT.
    If a person, to induce another to contract with him, states on his personal knowledge that a fact exists, without having knowledge whether the statement is true or reasonable grounds for believing it to be true, he makes a fraudulent misrepresentation, if the statement is false.

3. SAME—INTENT TO DECEIVE.
    A person having said he wanted to investigate whether a cellar on the premises was dry before signing a contract, the vendor falsely stated that

the cellar was dry, that he had never had any trouble with it, and that the purchaser might rely on his word. Just before the contract was signed, he told his broker that, if the purchaser said anything about the cellar, to pass it right along and say nothing about it. *Held*, that a finding that the false statement was made knowingly and with intent to deceive would be justified.

4. SAME—RELIANCE ON MISREPRESENTATION.
A finding that the purchaser relied on the false statement would also be justified, he having signed the contract without making the proposed investigation.

5. SAME.
The purchaser had a right to forego the investigation in reliance on the vendor's statement.

Appeal from trial term, New York county.

Action by Isaac Frank against the Bradley & Currier Company, Limited.    From a judgment entered on the dismissal of the complaint on a trial before a jury, plaintiff appeals.    Reversed.

Argued before RUMSEY, McLAUGHLIN, O'BRIEN, and INGRAHAM, JJ.

Charles E. Rushmore, for appellant.
Austin E. Pressinger, for respondent.

INGRAHAM, J.    This action was brought to recover damages for deceit, and was based upon certain representations made to the plaintiff by the vice president of the defendant corporation, which statements, it is alleged, were false, and known to the defendant to be false when made, and were made with intent to, and did, deceive the plaintiff and induce him to enter into a contract.    One Nicklass, who was in the employ of the defendant, had the legal title to a house and lot, No. 385 West End avenue, in the city of New York; but such title was held by Nicklass for the benefit of the defendant, who was the equitable owner of such property.    The plaintiff had his attention called to this house by one Bennett, a real-estate broker, and went with Bennett to the house to examine it.    While there he noticed an excavation in the cellar, with a little water in it, and inquired of the care taker of the house what that water was there for.    He was told that it was the sweepings of the cellar; that they had that day, or the day before, cleaned the cellar, and had swept the water into that excavation.    The plaintiff subsequently negotiated with a Mr. Currier, who was the vice president of the defendant, which resulted in a contract for the purchase of the house by the plaintiff for the sum of $23,000.    It appeared that at the first interview between the plaintiff and Currier the plaintiff asked Currier whether they had had any trouble with water in the cellar.    In reply to that, Currier said:

"No, not that he knew of. He never heard of any water in the cellars,—especially in that particular house. They did have trouble in the corner house, but not in that house. The trouble in the corner house was remedied by their building a fountain head."

After this conversation there were negotiations between the parties as to the price.    The plaintiff finally offered Currier $23,000 for the house, which was accepted.    The plaintiff stated to Currier, "I would take the house, but I wanted a couple of days to investigate it"; that

he had only been in the house once or twice; that he only looked at it superficially, and wanted thoroughly to investigate the cellar, in reference to a report about the water being in it. In reply to that, Currier said:

"In reference to the cellar of that particular house, that cellar is as dry as a nut. There never was any trouble with the cellar. We never had any trouble with water in it whatsoever, and that particular cellar is as dry as a nut."

On cross-examination, the plaintiff, in repeating this occurrence, testified:

"When we settled upon the price of the house, I asked him particularly. I wanted a couple of days to investigate the house. He wanted to know why I wanted to investigate, and I told him that I wanted to investigate the cellar, in reference to a report about the cellar being wet. He thereupon stated to me that they never had any trouble with water in the cellar. It was as dry as a nut, and I could take his word for it." That after that statement plaintiff said, "Relying upon what you say, I will take the house."

This testimony of the plaintiff was corroborated by his wife, who was present at the interview, and by Bennett, the real-estate broker who acted for the defendant in the sale of the house. Bennett testified that on the day when the contract was made, before the plaintiff arrived, Currier said that he wanted to get rid of the house. "I asked him then about the water in the cellar of the house, and he said, if Frank said anything about that, why, to pass it lightly along, and not say anything about it." Bennett suggested to Currier that he should state in the contract that the cellar was perfectly dry, but Currier, in reply, said that it was not necessary to state anything; that there was no water in the cellar; that there had been water in other houses, but not in that house; that it was not necessary to put any such thing in the contract. He further testified that when the plaintiff asked Currier, before the contract was drawn, whether he would not put the agreement in the contract or the covenant to the effect that the cellar was dry, Currier said that it was not necessary, for he knew the cellar was dry. A contract was then prepared, and plaintiff signed it, and paid $500 to Currier, which was received by defendant, and deposited to its account. After the contract was signed, but before the time for its completion, the plaintiff caused an examination of the house to be made, when it was discovered that the cellar was not dry; that two or three years before there had been at times several feet of water on the cellar floor; that this hole or excavation in the cellar was full of water; that the walls and floor of the cellar were damp; that the ironwork in the cellar had rusted so that the rust had come through the paint. There was ample evidence to sustain a finding of the jury that the statements made by the plaintiff were false, and that the cellar was not dry, and was not in a sanitary condition.

The trial judge dismissed the complaint. The action being for deceit, it was essential that the plaintiff should prove facts from which the jury could find that the statements made by the defendant were false, and were known by the defendant to be false, that they were made with intent to deceive, and that they actually did deceive, and cause the injury to recover for which the action was brought. But

we think that there was evidence from which the jury could find that the plaintiff has sustained this burden, that there were representations of a fact which induced the plaintiff to execute the contract, and that such representations were fraudulently made; that is, made with intent to deceive.   The statements made by Currier were not statements of opinion as to the condition of the house, but were statements of a fact,—that the cellar in the house was dry.   Coupled with that was the statement that he had never known or heard that the cellar was wet, but Currier's statement was that the cellar was "as dry as a nut," that there never was any trouble with the cellar, that they had never had any trouble with it whatsoever, and that the plaintiff could take his (Currier's) word for it.   Here was an express statement by the witness that a material fact did exist, and that the plaintiff could rely on the representation that such condition did exist.   It was not the expression of an opinion, not a statement of belief, but was the statement of the existence of a condition which Currier did or did not know of.   If he knew the actual condition of the cellar, and that the cellar was wet, he stated the existence of a condition which he knew in fact did not exist.   If he had no knowledge of the condition of the cellar, and yet stated as a fact that it was a dry cellar, he made a fraudulent misstatement; for, as was said in the case of Daly v. Wise, 132 N. Y. 312, 30 N. E. 839:

"In case a party, for the purpose of inducing another to contract with him, states, on his personal knowledge, that a material fact does or does not exist, without having knowledge whether the statement is true or false, and without having reasonable grounds to believe it to be true, is liable in fraud, if the statement is relied on and is subsequently found to be false, although he had no actual knowledge of the untruth of the statement."

There was also evidence to sustain a finding of the jury that this statement was made with intent to deceive.   The statement of the existence of this particular condition was made in answer to a statement by the plaintiff that he would take the house, but wanted two or three days to investigate the condition of the cellar,—as to whether it was wet or dry.   In answer to that statement, Currier made the express representation that the cellar was dry, and that the plaintiff could rely upon his word.   And this in connection with the testimony of the real-estate broker that, "before Frank arrived" at this interview, he (the broker) asked Currier about the water in the cellar, to which Currier replied that, "if Frank said anything about that, pass it right along, and not to say anything about it," would tend strongly to show, if believed by the jury, that Currier knew that there was water in the cellar, and that Frank would have discovered it if he had made an examination, which would result in his refusal to purchase the house, that he deliberately made the statement for the purpose of inducing Frank to sign the binding contract without making an examination, and that when he made the statement he knew it to be false.   There was also evidence to justify a finding of the jury that the plaintiff relied upon Currier's statement as to the condition of the cellar.   It is quite apparent, if the testimony is to be believed, that, but for this statement, Frank would not have signed the contract without making an examination, which the testimony shows would have disclosed the

fact that the cellar was damp, and not in a sanitary condition. There was therefore evidence sufficient to justify a verdict for the plaintiff,— evidence that representations were made, and that they were false, and known to be false by Currier when he made them, and were made with intent to deceive, and did deceive, the plaintiff, and induce him to sign the contract.

It is claimed, however, by the defendant, that, as the plaintiff had an opportunity of examining the house, he was bound to investigate it himself, and not rely upon representations of the defendant or its agents. But in this case the plaintiff proposed to make such an investigation, and was prevented by the express declaration of the defendant's representative that such an investigation was unnecessary, because, as a fact, the cellar was dry. Here the false representation of the defendant was designed to, and did, prevent the plaintiff from making an investigation which would have revealed the defect in the house. Under such circumstances, it certainly does not lie in the mouth of the defendant to say that the plaintiff, notwithstanding the defendant's representation, should have made the investigation which would have shown the representations to be false. It follows that the dismissal of the complaint was wrong, and the judgment should be reversed, and a new trial ordered, with costs to the appellant to abide the event. All concur.